**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JANA M. BAYLISS,

        *Plaintiff-Appellant,*

    v.

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        *Defendant-Appellee.*

No. 04-35634

D.C. No.
CV-03-01431-AA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted
September 15, 2005—Portland, Oregon

Filed November 2, 2005

Before: Raymond C. Fisher, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould

15047

**COUNSEL**

David B. Lowry, Portland, Oregon, for the plaintiff-appellant.

Joanne E. Dantonio, Social Security Administration, Office of the General Counsel, Seattle, Washington, for the defendant-appellee.

## OPINION

GOULD, Circuit Judge:

Jana Bayliss appeals the district court's affirmance of the Social Security Commissioner's denial of her application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., 1381 *et seq*. The Administrative Law Judge ("ALJ") found that Bayliss retained the capacity to perform a wide range of light work, and thus that she was not disabled within the meaning of the Social Security Act. The Appeals Council declined review, and the district court affirmed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

## I

[1] Bayliss asserts that her due process rights were violated. She contends that the ALJ was preoccupied with whether her attorney properly disclosed a doctor's report, and thus that the ALJ did not impartially assess the evidence. To succeed in this claim, Bayliss must show that "the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.' " *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) (quoting *Liteky v. United States*, 510 U.S. 540, 551 (1994)). We must begin with a presumption that the ALJ was unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982) ("We must start . . . from the presumption that the hearing officers . . . are unbiased."). Bayliss

---

[1]Our review is de novo. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* If the record would support more than one rational interpretation, we defer to the ALJ's decision. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

can rebut this presumption by showing a "conflict of interest or some other specific reason for disqualification." *Id.*

The ALJ prepared a detailed, forty-five-page opinion in which he carefully examined Bayliss's medical history and addressed the opinion of each reviewing doctor. In the opinion, the ALJ posited that Bayliss's counsel had withheld medical records from experts in an effort to garner records and testimony that would support Bayliss's claim.[2] For example, the ALJ noted: "Given that counsel withheld all relevant medical records from Dr. Manfield, it is obvious that he had no means of independently verifying the claimant's grossly exaggerated subjective descriptions of her status since the motor vehicle accident." In finding that questionnaire responses provided by Ms. Baptiste, a social worker who conducted mental health counseling for Bayliss, were not supported by the record, the ALJ wrote: "It is reasonable to presume that counsel did not provide relevant treating source medical records for Ms. Baptiste to review . . . ."

The ALJ also took exception to the self-assessment forms submitted by Bayliss's counsel. The ALJ first noted that, in general, such assessments provide little assistance in determining whether claimants are disabled because claimants lack the requisite medical expertise. He then stated: "Counsel's submission of 'medical source' self-assessments completed by this particular claimant, however, amounts to a mockery of the goals of evidentiary integrity and due process that are the foundation of the . . . disability hearing system."

**[2]** The ALJ had previously conducted an extensive hearing. In his opinion resolving the case, the ALJ determined,

---

[2]In his opinion, the ALJ also stated repeatedly that he found Bayliss's allegations of various physical and mental limitations not credible. Bayliss, however, does not assert that these statements manifest bias against her; she argues only that the ALJ's statements regarding her counsel show bias.

based on substantial evidence, that Bayliss was not credible. The ALJ found that objective medical evidence contradicted several of the doctors' reports submitted in support of Bayliss's claim. He documented his findings and opinions in a detailed and reasoned opinion. In this context, the ALJ's statements attributing misconduct to Bayliss's counsel are not so extreme as to show that the ALJ could not render a fair judgment. *Compare Rollins*, 261 F.3d at 858 (holding that an ALJ's occasional remark expressing sarcasm or impatience did not amount to bias), *with Ventura v. Shalala*, 55 F.3d 900, 902-04 (3d Cir. 1995) (holding that a claimant's due process rights were violated when the ALJ expressed hostility toward the claimant's lay representative's use of leading questions, interrupted the claimant's testimony to question the claimant in an intimidating manner on an irrelevant issue, and interfered with the admission of evidence as to physical causes of the claimant's pain).

Applying the standard from the Supreme Court's *Liteky* decision, our sister circuits, like our circuit in *Rollins*, have rejected allegations that due process was violated when isolated parts of an ALJ's conduct were challenged but the record as a whole showed fundamental fairness for the litigants. *See, e.g., Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999) (holding that the ALJ's statement that the claimant's treating doctor "was attempting to help the claimant get benefits because of his relationship with her," and the ALJ's refusal to rely on the doctor's medical opinion, did not establish bias because the ALJ's conclusion denying disability benefits was supported by substantial evidence); *Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996) (holding that the ALJ's refusal to provide the claimant's counsel with records and a doctor's notes before counsel cross-examined the doctor did not show bias); *Ginsberg v. Richardson*, 436 F.2d 1146, 1151 (3d Cir. 1971) ("We have reviewed the entire record in this case, and while the conduct of the hearing examiner is subject to some criticism, we cannot say that it was so unfair as to constitute a denial of due process.").

**[3]** In light of the ALJ's detailed and reasoned written grounds for ruling against Bayliss, we conclude that the statements in the ALJ's opinion in which the ALJ expressed displeasure with the conduct of Bayliss's counsel are not sufficient to establish bias. *See Rollins*, 261 F.3d at 858 (" '[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display' do not establish bias.") (quoting *Liteky*, 510 U.S. at 555-56). We affirm the district court's determination that Bayliss's due process rights were not violated.

## II

**[4]** Bayliss next argues that the ALJ improperly rejected the opinions of several doctors. To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.* Also, when evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

**[5]** The ALJ rejected Dr. Tobin's statement that Bayliss could stand or walk for only fifteen minutes at a time. Dr. Tobin took clinical notes on the same day that he made this statement. These notes, and the doctor's other recorded observations and opinions regarding Bayliss's capabilities, contradict Dr. Tobin's statement assessing Bayliss's ability to stand or walk. Such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding Bayliss's limited ability to stand and walk. *See Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989). The ALJ's rejection of Dr.

Tobin's opinion is supported by substantial evidence and was based on a permissible determination within the ALJ's province.

Substantial evidence also supports the ALJ's treatment of Dr. Sweet's determination that Bayliss has difficulty paying attention, concentrating, and organizing herself without getting overwhelmed. The ALJ agreed with Dr. Sweet's conclusions, but the ALJ determined that the conditions Dr. Sweet identified would not affect Bayliss's ability to work. Bayliss has faced these limitations since at least 1995, before her 1998 accident, and they have not prevented her from completing high school, obtaining a college degree, finishing a Certified Nurses' Aide training program, and participating in military training.

Bayliss also contends that the ALJ improperly rejected Dr. Manfield's psychological assessment and Dr. Freeman's opinion that Bayliss suffers from bipolar disorder. Dr. Manfield concluded that Bayliss suffered from several mental conditions,[3] but he based this assessment on Bayliss's complaints and information submitted by her family, her friends, and a former counselor. He did not review objective medical data or reports from treating physicians or counselors. Similarly, Dr. Freeman's opinion was not supported by clinical evidence and was based on Bayliss's subjective complaints. Substantial evidence supports the ALJ's decision not to rely on the opinion of either doctor. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is

---

[3]These conditions include major depressive disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, cognitive disorder, personality disorder, intermittent insomnia, and a global assessment of functioning ("GAF") of forty. A GAF of forty indicates some impairment in reality testing or communication, or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th TR. ed. 2000).

brief, conclusory, and inadequately supported by clinical findings.").

Bayliss further asserts that the ALJ should have recontacted Drs. Tobin, Sweet, and Manfield before rejecting parts of their opinions. "The claimant bears the burden of proving that she is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. 20 C.F.R. §§ 404.1512(e), 416.912(e); *Thomas*, 278 F.3d at 958. The ALJ, with support in the record, found the evidence adequate to make a determination regarding Bayliss's disability. Accordingly, the ALJ did not have a duty to recontact the doctors.

## III

Bayliss next contends that the ALJ's determination of her Residual Functional Capacity ("RFC") was error because the ALJ did not perform a function-by-function analysis pursuant to Social Security Ruling ("SSR") 96-8p. She further maintains that the ALJ's failure explicitly to address the drowsiness side-effect of her medication and her reaction to stress was error.

**[6]** We will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. *Morgan*, 169 F.3d at 599. In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on Bayliss's subjective complaints. Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary. *See* SSR 96-8p.

## IV

**[7]** Bayliss argues that the ALJ's reliance on the Vocational Expert's ("VE's") testimony was error because the hypothetical presented to the VE did not include all of her limitations. The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record. The ALJ's reliance on testimony the VE gave in response to the hypothetical therefore was proper. *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). Further, the ALJ's reliance on the VE's testimony regarding the number of relevant jobs in the national economy was warranted.[4] An ALJ may take administrative notice of any reliable job information, including information provided by a VE. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.

---

[4]Bayliss relies on the requirements for the admissibility of expert testimony under Federal Rule of Evidence 702, established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See id.* (establishing a gatekeeping function to screen expert scientific testimony for relevance and reliability); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (applying the *Daubert* rule to all expert testimony, not merely to scientific testimony). The Federal Rules of Evidence do not apply to the admission of evidence in Social Security administrative proceedings. *See* 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 404.950(c), 416.1450(c) ("The administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court."); *Richardson v. Perales*, 402 U.S. 389, 400 (1971) ("[S]trict rules of evidence, applicable in the courtroom, are not to operate at social security hearings so as to bar the admission of evidence otherwise pertinent . . . ."); *Banks v. Schweiker*, 654 F.2d 637, 640 (9th Cir. 1981). It is clear that the *Daubert* decision rests on an interpretation of Federal Rule of Evidence 702. *See Daubert*, 509 U.S. at 589-92. The requirements established in Federal Rule of Evidence 702, *Daubert*, and *Kumho* do not govern the admissibility of evidence before the ALJ in the administrative proceeding in this Social Security case.

## V

**[8]** Finally, Bayliss contends that the ALJ improperly rejected aspects of testimony provided by her friends and family members. An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Inconsistency with medical evidence is one such reason. *Id.* The ALJ accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard. The ALJ's rejection of certain testimony is supported by substantial evidence and was not error.

**AFFIRMED.**