**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FREDERICK DEL SORTER,

Plaintiff - Appellant,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

Defendant - Appellee.

No. 09-16626

D.C. No. 2:08-cv-00647-CMK

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Craig Kellison, Magistrate Judge, Presiding

Submitted July 15, 2010[**]
San Francisco, California

Before: W. FLETCHER and M. SMITH, Circuit Judges, and TODD, Senior
District Judge.[***]

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable James Dale Todd, Senior United States District Judge
for the Western District of Tennessee, sitting by designation.

Plaintiff Frederick del Sorter appeals the Commissioner of Social Security's denial of his application for Social Security Disability Benefits. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand in part, and affirm in part. As the facts and procedural history are familiar to the parties, we recite them here only as necessary to explain our decision.

## 1. Listed Impairment 12.05(C)

Sorter argues that the Administrative Law Judge (ALJ) failed to apply the proper criteria to determine if he is presumptively disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). We agree. To qualify as presumptively disabled under § 12.05, the claimant must "satisf[y] the diagnostic description in the introductory paragraph [§ 12.05] and any one of the four sets of criteria [outlined in paragraphs A, B, C, or D]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) (noting that § 12.05 is an *exception* to the general rule of applying the "paragraph B criteria" to claims of mental disorder under § 12.00). On the question of whether Sorter is disabled under § 12.05(C), the ALJ erroneously evaluated Sorter's claim considering the "paragraph B criteria" rather than considering the introductory paragraph of § 12.05 and the particular criteria in paragraph C under that section (whether Sorter registers "[a] valid verbal, performance, or full scale IQ of 60 through 70 and [has] a physical or other mental

impairment imposing an additional and significant work-related limitation of function," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C)).

We cannot say that this error was harmless. Sorter presented evidence that (1) medical testing proves his verbal IQ is 67 and his full scale IQ is 70; (2) he was in special education classes throughout his school years, showing that his low intellectual functioning manifested prior to age 22; and (3) his degenerative disc disease, broad-based disc bulge with probable annular tear, and probable learning disorder, all establish additional work-related limitations. This evidence is arguably sufficient to satisfy § 12.05(C). *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). On the other hand, given (1) Dr. Nakagawa's assessment of Sorter's borderline intellectual functioning and otherwise mild difficulties; (2) Sorter's work history post-age 22; (3) the vagueness of Sorters's evidence about his history in special education classes; and (4) the objective medical evidence that Sorter's back injury only imposes moderate physical limitations on his activities, we cannot conclude in the first instance that a finding in his favor is warranted. We therefore reverse the denial of benefits and remand to the ALJ for reconsideration of whether Sorter meets § 12.05(C).

## 2. Dr. Mathews

Sorter next argues that the ALJ erred by not contacting Sorter's treating physician, Dr. Jeffrey Mathews, to obtain additional, clarifying, medical records that would have assisted the ALJ in determining Sorter's Residual Functional Capacity. However, the ALJ did not find any ambiguity in the medical records, and to the extent the records were incomplete, that was due to Sorter's own lack of treatment over the several years prior to his application for benefits. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Moreover, to the extent the ALJ had a duty to supplement the record in this case, she fulfilled that duty by ordering consulting evaluations.

**3. Adverse Credibility**

Sorter further argues that the ALJ improperly discredited his subjective testimony about the extent to which his back injury and borderline mental functioning impair his ability to work. However, the ALJ gave specific, clear and convincing reasons, supported by substantial evidence in the record, for finding Sorter's testimony about the degree to which he is impaired not entirely credible. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). Combining the facts that (1) the 2005 medical evaluations consistently showed only moderate physical and mental limitations; (2) Sorter has used only mild therapies to treat his pain, like ibuprofen; and (3) Sorter engages in various everyday activities without

identified restrictions, there is substantial evidence supporting the ALJ's finding that Sorter's pain is not debilitating to the degree he claims.

**4.      The Medical Vocational Guidelines**

Sorter finally argues that the ALJ erred in using the Medical Vocational Guidelines (the Grids) in lieu of the testimony of a Vocational Expert to determine if Sorter is capable of performing jobs that exist in substantial numbers in the national economy.  It may be inappropriate for an ALJ to rely on the Grids when a claimant suffers from significant non-exertional impairments such that the Grids do not accurately and completely reflect a claimant's limitations.  *Tackett v. Apfel*, 180 F.3d 1094, 1103–04 (9th Cir. 1999).  Here, Sorter's non-exertional limitations relate to his illiteracy and borderline intellectual functioning.  The ALJ expressly found that Sorter's limitations would not affect the utility of the Grids, which account for illiteracy and emphasize unskilled work that can be performed despite borderline intellectual functioning like Sorter's.  Because the Grids accurately and completely accounted for Sorter's claimed mental limitations, reliance on them was not inappropriate in this case.

## Conclusion

In light of the foregoing, we REVERSE the denial of benefits and REMAND for reconsideration of whether Sorter qualifies as presumptively

disabled under § 12.05(C).  We AFFIRM the ALJ's decision not to contact Dr.

Mathews, the ALJ's adverse credibility finding, and the ALJ's use of the Grids.

**REVERSED and REMANDED, in part, and AFFIRMED, in part.**

The parties shall bear their own costs on appeal.