IKUTA, Circuit Judge,
dissenting:
Today, the majority usurps the ALJ’s role as factfinder and decides that its own notion of “unconscionability” trumps the Social Security Act, the regulations, and Ninth Circuit precedent. Never mind that Congress placed the responsibility on the ALJ to review the record and figure out “the most [Beltran] can still do despite [her] limitations,” 20 C.F.R. § 404.1545(a)(1); see also § 404.1546(c), and that Congress instructed the ALJ to disregard whether Beltran would actually be hired if she applied for the jobs she is capable of performing, see 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a), (c); see also Martinez v. Heckler; 807 F.2d 771, 774-75 (9th Cir.1987). The majority runs roughshod over these congressional commands, not to mention the requirement that this court defer to the ALJ’s determination if supported by substantial evidence, which the Supreme Court has defined as “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (internal quotation marks omitted)); see also 42 U.S.C. § 405(g).
The ALJ here quite reasonably determined that during the time period at issue, Beltran was capable of performing a limited range of unskilled, sedentary work.[1] The ALJ properly relied on the vocational expert’s testimony regarding the number of jobs that Beltran was capable of performing despite her limitations. See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir.2005); see also 20 C.F.R. § 404.1566(e).
But the majority insists it can do a better job. Overriding the ALJ, the majority asserts that it would be “unconscionable” to expect Beltran to find one of the sedentary jobs identified by the vocational expert because “it is extremely unlikely that a woman with her physical and mental limitations—who at the time in question was forty-nine years old and only possessed a high school degree—would be able to get to the job, let alone be hired as a surveillance system monitor.” Maj. op. at 1207.
The majority has no business speculating as to whether Beltran would be able to get to the job or be hired for the job, because the ALJ properly included all of Beltran’s mental and physical limitations— including the limitations on her mobility— in the hypothetical posed to the vocational expert. We are required to affirm the ALJ’s determination of Beltran’s residual functional capacity so long as it is supported by substantial evidence, see Bayliss, 427 F.3d at 1217, and we may not collaterally attack the ALJ’s factual find *1209 ings when considering whether the number of jobs available to a person with Beltran’s limitations is “significant” under the regulations. Moreover, the majority’s approach has no basis in the applicable law. Congress established that in determining whether a claimant can perform work that exists in the national economy, it is irrelevant “whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.” 42 U.S.C. § 423(d)(2)(A);[2] see also Martinez, 807 F.2d at 774-75 (“Congress has explicitly determined that it is the existence of jobs that is essential, and that an administrative law judge is not required to consider the hiring practices of employers, or whether a claimant could actually obtain work if he applied for it.”). Given this clear direction, the majority has it upside down when it claims that the AL J erred in not considering whether Beltran could actually “find” a job vacancy or “be hired” if she applied to get the existing jobs she was capable of performing. Maj. op. at 1207.
The majority makes yet another error when it decides it is better situated than the AL J to determine that the existence of 135 jobs in the regional economy and 1,680 jobs in the national economy does not meet the statutory requirement that there be “work which exists in significant numbers either in the region where such individual lives or in several regions of the country.” 42 U.S.C. § 423(d)(2)(A). The majority fails to give the deference owed to the adjudicative determination of the ALJ regarding this essentially factual finding. [3] Barker, 882 F.2d at 1480 (“[Wjhether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer.” (quoting Martinez, 807 F.2d at 775)). And yet the majority *1210 provides no persuasive reasoning for its pronouncement that 135 jobs in the region where Beltran lives and 1,680 jobs in the national economy are not “significant” numbers for purposes of the statute. Although the majority rattles off numerous cases, the only case in which we actually reversed an ALJ’s determination on this issue was Walker v. Mathews, where the record revealed that there were only “a few scattered jobs” in the nation the claimant was capable of performing. 546 F.2d 814, 820 (9th Cir.1976). Our decision that “a few scattered jobs” is not a “significant number” is scarcely controversial, and it certainly does not support the majority’s determination that 1,680 jobs isn’t either. Each of the other cases cited by the majority merely affirmed as a matter of course the ALJ’s factual determination that the number of jobs identified by the vocational expert was significant.
Our holding in Barker compels the conclusion that 135 jobs in the regional economy constitutes a significant number of jobs. There, we held that 1,266 regional jobs constituted a significant number because it fell “within the parameters of ‘significant numbers’ found” by other courts. Barker, 882 F.2d at 1479. In defining these parameters, we relied in part on a district court case holding that the 125 to 240 tune-up mechanic positions the claimant was capable of performing “constitute[d] a ‘significant’ number as that term is used in the Secretary’s regulations.” Uravitch v. Heckler, No. CIV-84-1619PHX-PGR, 1986 WL 83443, at *1 (D.Ariz. May 2, 1986); Barker, 882 F.2d at 1478-79 (relying on Uraviteh). It naturally follows that 135 jobs in the regional economy is also a significant number of jobs, as it is greater than the lower parameter set by this court in Barker. Barker, 882 F.2d at 1478-79.
We must uphold the ALJ’s decision if it is supported by substantial evidence, which “is a highly deferential standard of review.” Valentine v. Comm’r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir.2009). Here, the ALJ’s determination that the number of jobs identified by the vocational expert was significant and thus that Beltran was not disabled is supported by substantial evidence. By holding otherwise, the majority not only elbows the ALJ out of her proper role, but also turns its back on the decisions of other circuits. See, e.g., Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir.2009) (noting that “[a]s few as 174 jobs has been held to be significant” (citing Allen v. Bowen, 816 F.2d 600, 602 (11th Cir.1987))); Johnson v. Chater, 108 F.3d 178, 180 & n. 3 (8th Cir.1997) (holding that 200 jobs in the state was a significant number); Scott v. Shalala, 43 F.3d 1483 (10th Cir. Dec. 21,1994) (unpublished table decision) (holding that 195 jobs in the state was a significant number); Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir.1987) (holding that the existence of 200 jobs in the regional economy was a “clear indication” that other substantial gainful work existed in the national economy).
Because the majority here usurps the role Congress gave to the ALJ, and tramples the plain language of the statute, I respectfully dissent.

. 42 U.S.C. § 423(d)(2)(A) states in full:
An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work- but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy” means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
(emphasis added); see also 20 C.F.R. § 404.1566(c):
Inability to obtain work. We will determine that you are not disabled if your residual functional capacity and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of—
(1) Your inability to get work;
(2) Lack of work in your local area;
(3) The hiring practices of employers;
(4) Technological changes in the industry
in which you have worked;
(5) Cyclical economic conditions;
(6) No job openings for you;
(7) You would not actually be hired to do work you could otherwise do;
(8) You do not wish to do a particular type of work.

. The majority misconstrues the record in concluding that the vocational expert qualified her statement as to the number of jobs available in the national economy. The expert’s impressionistic comments about the general decline in surveillance system monitor jobs and her own personal degree of familiarity with the tri-county area of southern California in no way modified her unequivocal conclusion that there were 135 jobs in the regional economy and 1,680 jobs in the national economy that Beltran was capable of performing.