**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 20 2014


MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FRED A. LARSEN,

              Plaintiff - Appellant,

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant - Appellee.

No. 13-35259

D.C. No. 6:11-cv-06415-TC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Submitted October 9, 2014[**]
Portland, Oregon

Before: FISHER, CHRISTEN, and NGUYEN, Circuit Judges.

    Fred A. Larsen appeals the district court's judgment affirming the decision

of the Commissioner of the Social Security Administration, which denied his

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

applications for disability insurance benefits and supplemental security income, pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, 1382c.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1.    The ALJ gave sufficiently "clear and convincing" reasons, *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), for finding that Larsen's testimony was not credible. The ALJ found that several of Larsen's subjective complaints were not consistent with medical evidence in the record. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (noting that subjective testimony regarding pain can be properly rejected by the ALJ if contradicted by medical reports or other evidence). Despite Larsen's complaint of carpal tunnel syndrome, Dr. Nolan was "unable to find physical findings supportive of a diagnosis of carpal tunnel syndrome." Regarding Larsen's reports of back and leg pain, a physical examination showed that Larsen's hips, knees, feet and ankles were "non tender with range of motion and palpitation," and Larsen was "able to ambulate on his toes and heels without problems." MRI imaging of Larsen's spine did not reveal any stenosis, and MRI imaging of his knee and hip was "normal." Additionally, the ALJ found that Larsen "engage[d] in daily activities inconsistent with [his] alleged symptoms."

_____

[1] The Appeals Council denied Larsen's request for review. Thus, the ALJ's decision became the final decision of the Acting Commissioner of Social Security for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

*Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).  In particular, Larsen said that he could prepare meals, shop for groceries, drive, and lift bags of pet food weighing approximately 16 pounds.  Larsen also visited Colorado in 2009, and performed limited work in 2002 and 2004.

2.    The ALJ provided "specific and legitimate reasons that are supported by substantial evidence," *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005), for rejecting the opinions of Drs. Oelke and Nolan.  Both opinions relied "to a large extent on [Larsen's] self-reports that [were] properly discounted as incredible."  *Tomassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (internal quotation marks omitted).  In contrast, the opinions of Drs. Kehrli and Habjan were consistent with the general lack of objective evidence in the record concerning the severity of Larsen's alleged symptoms.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that "the contrary opinion of a non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record.").

3.    The "physical functional capacity questionnaire" incorporated into the record by the Appeals Council does not require remand.  This questionnaire is substantially identical to a questionnaire considered, and rejected, by the ALJ.  The

3

essential difference between the two documents is that the latter incorporated version appears to be co-signed by Dr. Nixon, transforming it into an opinion of an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Such opinions may only be rejected for "specific, legitimate reasons." *See Molina*, 674 F.3d at 1111. These reasons, provided by the ALJ in rejecting the prior version of the questionnaire, include: (1) the assessment is not consistent with Larsen's medical records as a whole, *see Parra*, 481 F.3d at 750; (2) the findings rely heavily on Larsen's own reports of his symptoms, *see Tomassetti*, 533 F.3d at 1041; and (3) the assessment is in "check the box" format, i.e., it is "brief [and] conclusory," *see Bayliss*, 427 F.3d at 1216.

4. The ALJ's residual functional capacity ("RFC") determination and associated hypothetical questions asked at the hearing are supported by substantial evidence. The opinions of Drs. Kehlri and Habjan supported the ALJ's determination that Larsen has the RFC to perform "medium work." And the ALJ's hypothetical questions, posed to the vocational expert at the hearing, "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," *see id.* at 1217, because they incorporated several possible RFC's, with the most strenuous one being "medium work," as recommended by Dr. Kehrli and affirmed by Dr. Habjan.

**AFFIRMED**.