

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHEENA MARIE PRESLEY-CARRILLO,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant-Appellee. | No. 15-17286<br><br>D.C. No. 2:14-cv-00742-JAT<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
James A. Teilborg, District Judge, Presiding

Submitted June 15, 2017[**]
San Francisco, California

Before: THOMAS, Chief Judge, FRIEDLAND, Circuit Judge, and CARNEY,[***]
District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Cormac J. Carney, United States District Judge for the Central District of California, sitting by designation.

Plaintiff-Appellant Sheena Marie Presley-Carrillo appeals the district court's order affirming the Commissioner of the Social Security Administration's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., based on the finding that she could perform her past relevant work as a cashier. Ms. Presley-Carrillo alleged that she had been unable to work since August 30, 2010, due to schizophrenia, bipolar disorder, manic depression, and being seriously mentally ill. She argues that the Administrative Law Judge ("ALJ") erred in discounting the opinions of her treating and examining physicians, discounting her own testimony regarding her symptoms, and failing to conduct a function-by-function assessment of her claimed limitations in determining that her residual functional capacity was the ability to perform simple, repetitive, unskilled work.

We review de novo the district court's order affirming the denial of disability benefits. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). We may set aside an ALJ's denial of benefits only if it is based on legal error or not supported by substantial evidence. *Id*. An ALJ may reject a physician's uncontroverted opinion if he gives "clear and convincing" reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

The ALJ gave clear and convincing reasons supported by substantial evidence for affording "little weight" to the opinion of Dr. Beatriz Mateus, Ms. Presley-Carrillo's treating physician. In June 2012, Dr. Mateus opined that Ms. Presley-Carrillo suffered moderate impairments in her ability to perform complex or varied tasks, respond to work pressures, and complete a normal workday without unreasonable interruptions from psychological symptoms, as well as moderately severe impairments in her ability to respond appropriately to coworkers and supervisors. The ALJ discounted Dr. Mateus's opinion because he found that it conflicted with her own medical treatment notes and there were no other objective or clinical findings to support the opinion. The record as a whole supports the ALJ's finding. The treatment notes reflected consistently mild symptoms, mental stability, and no further delusions or hallucinations from June 2011 onwards, when Ms. Presley-Carrillo stopped using illicit drugs and was compliant with her medications. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (concluding that inconsistency between physician's

opinion and treatment notes was a proper basis for discrediting opinion); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (same).

Ms. Presley-Carrillo also argues that the ALJ improperly relied on the Global Assessment of Function ("GAF") score recorded in her treatment notes in discounting Dr. Mateus's opinion. She argues that this score was suspect because it remained at 70 (indicating only mild impairments) even when the treatment notes otherwise demonstrated that her symptoms had significantly worsened. Although GAF scores in isolation are insufficient to determine a patient's level of functioning, the Social Security Administration has indicated that they should be "considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) when they are from an acceptable medical source." Soc. Sec. Disab. Claims Handbook § 2:15 n.40 (citing SSA Administrative Message 13066). Here, the ALJ considered the GAF score alongside the remainder of the extensive treatment notes in concluding that Dr. Mateus's opinion deserved "little weight;" that was not an error.

The ALJ likewise gave clear and convincing reasons supported by substantial evidence for attributing "little weight" to the opinion of Dr. Marcel Van Eerd, the examining physician. Dr. Van Eerd examined Ms. Presley-Carrillo once in December 2010 and opined, among other things, that Ms. Presley-Carrillo

4

suffered mild to moderate limitations in understanding simple, work-like instructions and severe limitations in maintaining routine and adapting, and demonstrated a poor ability to make work decisions on a consistent basis and to manage stress. He also opined that she would have "severe limitations" in maintaining a repetitive routine and would likely require "more than routine supervision." The ALJ did not simply discredit Dr. Van Eerd's opinion because there were more recent medical records *available*, as Ms. Presley-Carrillo argues. Rather, the ALJ found that the treatment notes from the year and a half after Dr. Van Eerd's assessment showed significant *improvement* in her condition. Nor did the ALJ rely on Dr. Mateus's discredited opinion to discredit that of Dr. Van Eerd, as Ms. Presley-Carrillo contends. Rather, he relied on Dr. Mateus's extensive treatment notes to discount the workplace functionality opinions of both Dr. Mateus and Dr. Van Eerd.

The ALJ also criticized Dr. Van Eerd's opinion in part because Dr. Van Eerd did not define the terms "mild," "moderate," or "severe" in his assessment. This criticism was improper, since the ALJ did not raise such concerns at the hearing. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (explaining that ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered," and "[a]mbiguous evidence, or the

5

ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996))). However, this error was harmless because the ALJ gave a reason supported by the record for not giving much weight to Dr. Van Eerd's opinion—specifically, that it conflicted with more recent treatment notes from Dr. Mateus. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (concluding that ALJ's error was harmless in light of other valid reason given for adverse credibility determination).

The ALJ also provided clear and convincing reasons supported by substantial evidence for discounting Ms. Presley-Carrillo's testimony regarding her symptoms of confusion and being unable to concentrate. The ALJ reasonably concluded that this testimony was not credible because it conflicted with the medical evidence showing mild impairments and stable condition when Ms. Presley-Carrillo was not taking illicit drugs and was taking her prescribed medications. Moreover, as the ALJ reasonably found, Ms. Presley-Carrillo's typical daily activities were inconsistent with her symptom testimony—particularly given that she already worked part-time and regularly handled money at home by paying bills, managing a savings account, counting change, and using a checkbook.

6

*Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) ("While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits . . . the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987))). The ALJ did not discredit Ms. Presley-Carrillo's testimony due to a lack of *supporting* evidence, as Ms. Presley-Carrillo contends, but rather, because her testimony *conflicted* with evidence of her daily activities and, more importantly, with the extensive treatment notes indicating that she consistently exhibited mild symptoms and mental stability when she stopped using illicit drugs and took her prescribed medications. *See, e.g.*, *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (concluding that ALJ's rejection of claimant's testimony was supported by clear and convincing reasons in light of inconsistencies between claimant's testimony and objective medical evidence in the record).

Ms. Presley-Carrillo also argues that the ALJ failed to view her noncompliance in taking prescribed medications as part of her overall mental illness when discounting her testimony. However, Ms. Presley-Carrillo does not point to any evidence in the record demonstrating that her mental health impairments caused that noncompliance. *Cf. Garrison v. Colvin*, 759 F.3d 995,

7

1018 n.24 (9th Cir. 2014) ("[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions."). The record demonstrates that in the year leading up to the hearing before the ALJ, Ms. Presley-Carrillo was capable of consistently taking her prescribed medications.[1]

Finally, the ALJ did not err in finding that Ms. Presley-Carrillo's residual functional capacity was the ability to perform simple, repetitive, unskilled work or in concluding that she could perform her past relevant work as a cashier. Contrary to Ms. Presley-Carrillo's assertion, it was not necessary for the ALJ to list the requirements of a cashier job and then compare those requirements to Ms. Presley-Carrillo's capabilities on a function-by-function basis. *Bayliss*, 427 F.3d at 1217 ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."). The ALJ had already discredited Ms. Presley-Carrillo's symptom testimony and

---

[1] Ms. Presley-Carrillo also contends that the ALJ erred in discounting her testimony on the ground that she made inconsistent statements about her sobriety. We need not reach this issue, however, because the ALJ provided sufficient other reasons for discounting her testimony—namely, that her testimony conflicted with evidence of her typical daily activities and the information contained in Dr. Mateus's treatment notes.

the opinions of Dr. Van Eerd and Dr. Mateus; accordingly, there was no remaining, credible evidence that supported Ms. Presley-Carrillo's claimed limitations. The ALJ found, and the record adequately supports, that Ms. Presley-Carrillo's episodes of psychiatric difficulties were directly related to her use of illicit drugs and her failure to take prescribed medications. Substantial evidence supported the ALJ's conclusion that when Ms. Presley-Carrillo did not take illicit drugs and was compliant with her prescribed medications, the impairments that she suffered were not severe enough to impact her ability to engage in simple, repetitive, unskilled work.[2]

**AFFIRMED**.

---

[2] Ms. Presley-Carrillo also argues that the ALJ improperly relied on the Medical-Vocational Guidelines in determining that she could perform other jobs which exist in the national economy. We need not reach this issue because the ALJ's conclusion that she could perform other existing jobs was an alternative basis for denying benefits, and we have affirmed another basis—the ALJ's finding that she could perform her past relevant work as a cashier.